DECISION AND JUDGMENT ENTRY
{¶ 1} Appellant, Gregory Hicks, appeals his convictions on one count of aggravated murder, with specifications, an unclassified felony, and on two counts of aggravated burglary and two counts of aggravated robbery, all of which are felonies of the first degree.
 {¶ 2} Appellant sets forth the following assignments of error:
 {¶ 3} "I. The trial court erred by allowing into evidence statements made by the defendant to the detectives during custodial interrogation."
 {¶ 4} "II. The trial court erred in denying defendant relief from prejudicial joinder."
 {¶ 5} "III. The trial court abused its discretion by admitting gruesome autopsy photographs of the victim's dissected neck and head with the scalp pulled back to show the muscle beneath."
 {¶ 6} "IV. Defendant was denied effective assistance of counsel by defense counsel's failure to move for separate trials."
 {¶ 7} "V. Defendant's conviction on the charge of aggravated murder was against the manifest weight of the evidence."
 {¶ 8} The evidence offered at appellant's trial established that on Saturday, March 30, 2002, two women were victims of aggravated burglaries/aggravated robberies that occurred in the same vicinity of Toledo, Lucas County, Ohio. The second victim, Mary Lou Reilly, was killed by the intruder.
 {¶ 9} The first victim, Susan Rufenacht, attended church and then shopped for groceries. She returned to her home at approximately 3:30 p.m. Rufenacht parked in front of her home and, on her first trip, carried her purse and a bag of groceries into the house. She placed the groceries on her kitchen table and laid her purse under the table. The victim then made a second trip for more groceries. On the way back to her car, Rufenacht noticed a man walking down the street and nodded to him. After she deposited her second load of groceries, Rufenacht again turned and walked toward the front door to retrieve more groceries from her vehicle.
 {¶ 10} At that point, Rufenacht discovered the same man that she had seen on the street in her dining room. He told Rufenacht to give him her purse. The victim stated that her purse was still in her automobile. When the man exited the front door to go to Rufenacht's car, she closed and locked the door behind him, pushed the panic button on her home security system, and called 911. The man threw a cinder block through Rufenacht's sliding glass doors located at the rear of her home and fled the scene in his motor vehicle, which was parked in an alley. A neighbor heard the glass crash, saw the man leaving, and wrote down the vehicle's license plate number. The neighbor immediately went to Rufenacht's residence and gave her this information. When law enforcement officers arrived about five minutes later, the neighbor also supplied them with that plate number. After running a check on the license plate number, the police learned the car was owned by appellant.
 {¶ 11} Upon receiving the police officers' report, Detective Jessie Villarreal, of the Toledo Police Department, put together a photo array and went to Rufenacht's home. He arrived at some time between 4:00 p.m. and 4:15 p.m. Rufenacht immediately identified appellant as the man who came into her home and demanded her purse. After interviewing the victim, the detective returned to his office and issued a warrant for appellant's arrest. Detective Villareal was informed six hours later that appellant was arrested and was incarcerated in the Lucas County jail.
 {¶ 12} On that same afternoon, the Toledo Police Department investigated a situation involving a deceased woman who was found in her home. The woman, Mary Lou Reilly, resided about one mile from Rufenacht's home. At first, law enforcement officers assumed that Reilly died from a natural cause. However, Reilly's family told the officers that they could not find the decedent's purse. It was later learned that Reilly died as the result of strangulation and "blunt force trauma." Due to the similarity of both offenses and the proximity of the residences in which they occurred, the police believed that the same individual committed the offenses against Rufenacht and Reilly.
 {¶ 13} On April 8, 2002, the Lucas County Grand Jury indicted appellant on one count of aggravated robbery, a violation of R.C.2911.01(A)(3), a felony of the first degree, and one count of aggravated burglary, a violation of R.C. 2911.11(A)(1), a felony of the first degree. These charges related to the alleged criminal activity that occurred at Rufenacht's home. On April 11, 2002, the Lucas County Grand Jury returned an indictment charging appellant with one count of aggravated murder, a violation of R.C. 2903.01(B). This count of the indictment also contained specifications necessary for imposing death or imprisonment for a capital offense. The indictment also charged appellant with one count of aggravated robbery, a violation of R.C. 2911.01(A)(3), a felony of the first degree, and one count of aggravated burglary, a violation of R.C. 2911.11(A)(1), a felony of the first degree. These charges related to the alleged aggravated burglary/aggravated robbery and death of Mary Lou Reilly.
 {¶ 14} On June 4, 2002, appellee, the state of Ohio, filed, pursuant to Crim.R. 8(A), a motion for joinder of all charged offenses for a single trial. This motion was, over appellant's continuing objections, granted. Among several other motions, appellant filed a motion to suppress any oral statements that he made during the course of custodial interrogation by law enforcement officers and any evidence obtained as a result of these oral statements. After holding a hearing, the common pleas court denied the motion to suppress. In addition, the court below denied appellant's motion in limine, raised both prior to trial and at the appropriate time during trial, to exclude certain autopsy photographs of Reilly from the evidence presented to the jury.
 {¶ 15} On November 18, 2003, the jury returned verdicts of guilty on all counts in the indictments. After the mitigation hearing, the jury recommended that appellant be sentenced to life in prison without the possibility of parole on the count of aggravated murder with two specifications. On December 23, 2003, the trial judge adopted the jury's recommendation and sentenced appellant to life in prison without the possibility of parole on the aggravated murder charge, with specifications. With regard to the aggravated burglary and aggravated robbery convictions in the Rufenacht case, the court sentenced appellant to a term of nine years in prison on the aggravated burglary charge and to nine years in prison on the robbery charge; these terms were ordered to be served concurrent to each other but consecutive to the sentence of life in prison without possibility of parole.
 {¶ 16} In his Assignment of Error No. I, appellant contends that the trial court erred in denying his motion to suppress. Appellant was interrogated twice by Toledo police detectives. During the custodial interrogation that occurred on the evening of March 31, 2002 and continued through the early morning hours of April 1, 2002, appellant admitted that he was the person who committed the attempted aggravated burglary/aggravated robbery of Rufenacht. In a second custodial interview held on April 3, 2002, appellant eventually confessed that he was the individual who accosted Reilly and took her purse. However, appellant denied, as he did throughout the proceedings below, that he used enough force to fatally injure Reilly. Appellant asserts that these confessions are inadmissible because his alleged waivers of his right not to incriminate himself, as set forth in Miranda v.Arizona (1966), 384 U.S. 436, were not voluntary, knowing, and intelligent. He further maintains that his confessions were not voluntary.
 {¶ 17} When reviewing a trial court's decision on a motion to suppress, an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence. State v. McNamara (1997), 124 Ohio App.3d 706, 710. This standard is applicable because in a suppression hearing it is within a trial court's purview as the trier of fact to weigh the evidence and judge the credibility of witnesses. State v.Mills (1992), 62 Ohio St.3d 357, 366, citing State v. Fanning
(1982), 1 Ohio St.3d 19, 20. An appellate court may then determine, as a matter of law and without deferring to the trial court's conclusions, whether the trial court applied the appropriate legal standard. State v. Anderson (1995),100 Ohio App.3d 688, 691.
 {¶ 18} In deciding whether the common pleas court erred in denying appellant's motion to suppress we must determine (1) whether appellee voluntarily, knowingly, and intelligently waived his Miranda rights; and (2) whether appellee's statements were voluntary. Both of these determinations are made pursuant to a totality of the circumstances standard. State v. Clark (1988),38 Ohio St.3d 252, 261. The totality of the circumstances includes "`the age, mentality, and prior criminal experience of the accused; the length, intensity, and frequency of interrogation; the existence of physical deprivation or mistreatment; and the existence of threat or inducement.'" In reWatson (1989), 47 Ohio St.3d 86, 90, quoting State v. Edwards
(1976), 49 Ohio St.2d 31, paragraph two of the syllabus. Absent evidence that a defendant's will was overborne and his capacity for self-determination was critically impaired because of coercive police conduct, the decision of a suspect to waive his Fifth Amendment privilege is made voluntarily. State v. Daily
(1990), 53 Ohio St.3d 88, 91-92.
 {¶ 19} In the present case, appellant maintains that his waiver of his constitutional rights was not knowing, voluntary, and intelligent because he was "coming down" from a crack cocaine high at the time. Appellant also claims that his statements were involuntary because (1) he was coerced and; (2) the detectives who interrogated appellant "cajoled" incriminating statements from him. He also points to the lengthiness of the two interviews.
 {¶ 20} We begin by observing that appellant was 35 years old at the time of the two custodial interrogations and was, therefore, neither a child nor an aged individual. Appellant also has a prior criminal record that includes convictions for robbery and theft. At the suppression hearing, Detective Gast testified that he and Sergeant Tim Noble were the first police officers to interview appellant on March 31, 2002. The entire interview was videotaped and, in addition, could be seen and heard in Lieutenant Rick Reed's office.
 {¶ 21} Gast stated that appellant was read his Miranda
rights (and acknowledged them) at the inception of the March 31 interview. Appellant also signed a written waiver form, which was offered into evidence at the suppression hearing.[1] A review of the relevant portion of the videotape, which was also placed into evidence,[2] confirms this testimony. Gast also testified that appellant did not appear to be under the influence of drugs or alcohol. Again, the videotape reveals that appellant, although resting his head on his arms during a break and yawning at times during the interview, was articulate, was lucid, and did not appear to be under the influence of crack cocaine. Moreover, in State v. Slagle (1992) 65 Ohio St.3d 597, the Ohio Supreme Court found that despite the defendant's testimony that he was intoxicated and under the influence of marijuana at the time of his interview, the testimony of the police officer who questioned the defendant and testified that defendant was alert when he waived his rights was sufficient to support the trial court's denial of the defendant's motion to suppress his statements. Id. at 600. See, also, State v. Santini, 144 Ohio App.3d 396,2001-Ohio-3313, at ¶ 14.
 {¶ 22} Although the first interrogation was lengthy, appellant was provided with snacks and soda pop, was allowed to smoke, and was permitted to use the bathroom. Appellant readily admitted, some 40 minutes after the interview commenced, to the offenses committed against Rufenacht. There is nothing in the record of this cause to show that appellant was induced or coerced into making that confession. During the remainder of the interview, law enforcement officers learned the details of the aggravated burglary/aggravated robbery of Rufenacht and attempted to obtain a statement relating to the Reilly murder. Appellant, however, continued to deny any knowledge of that crime.
 {¶ 23} As for the second interview on April 3, 2002, appellant again signed a written waiver of his "Miranda rights" for the polygraph examiner and was subsequently interviewed by detectives. This interview lasted for approximately three hours and was directed solely at the murder of Reilly.
 {¶ 24} Appellant argues that his statements admitting that he had burglarized, robbed, and physically harmed Reilly were the product of police cajolery. "Cajolery" in the context of a custodial interrogation occurs when a defendant relinquishes his constitutional rights and makes inculpatory statements due to a law enforcement officer's false promises or deceptive information. Id. at 39.
 {¶ 25} During the second interview, appellant was told that the police had discovered physical evidence (DNA) linking him to Reilly's murder. This was, admittedly, a false statement. Nonetheless, while deception is a factor that bears on the voluntariness of a defendant's confession, this fact, standing alone, is not dispositive of the issue. See State v. Wiles
(1991), 59 Ohio St.3d 71, 81. Rather, the issue remains whether the "confession arises from defendant's will being overborne."State v. Brown (Jan. 30, 2001), 7th Dist. No. 96CA56, citingSchneckloth v. Bustamonte (1973), 412 U.S. 226. Here, the attempt at deceit was unsuccessful. Even in the face of alleged physical evidence, appellant's will was not overborne and he continued to deny that he killed Reilly.
 {¶ 26} Appellant was also told that he had a chance to avoid "the needle" or the "blue fluid" (both of these terms refer to the death penalty) by showing remorse and telling his version of the incident that led to Reilly's death. One detective used a criminal code book to show appellant the lesser offenses with which he could be charged. Appellant claims that these statements and acts also constituted "cajolery." Nonetheless, no one promised appellant that he would be charged with a lesser offense. Instead, he was simply informed that the jury and the judge may be more lenient. See State v. Mosley (Sept. 3, 1993), 7th Dist. No. 88CA24; State v. Frazier (Apr. 28, 1997), 6th Dist. No. L-77-184, rev'd, in part, on other grounds,58 Ohio St.3d 253. Accordingly, we conclude that appellant was not cajoled into confessing to Reilly's murder.
 {¶ 27} Furthermore, appellant was again given food and drink and a bathroom break during the second interview. He never asked for an attorney or complained that he was tired. Nor does appellant at any time appear to be under the influence of crack cocaine. In short, the prosecution demonstrated, by a preponderance of the evidence that, under a totality of the circumstances, appellant's waiver of his Fifth Amendment right against self-incrimination was intelligent, knowing, and voluntary and that his confessions were voluntary. Therefore, appellant's Assignment of Error No. I is found not well-taken.
 {¶ 28} Appellant's Assignment of Error No. II maintains that he was prejudiced because the trial court granted appellee's motion for joinder.
 {¶ 29} Pursuant to Crim.R. 13 a trial court "may order two or more indictments * * * to be tried together, if the offenses * * * could have been joined in a single indictment * * *." Crim.R. 8(A) allows the joinder of two or more offenses if they are of the same or similar character, or are based upon two or more acts or transactions that are connected together, or constitute part of a common scheme or plan, or are part of a criminal course of conduct. Joinder of offenses is favored because it conserves judicial resources by avoiding the duplication of multiple trials and minimizes the prospect of inconsistent results in separate trials before different juries. State v. Schaim (1992),65 Ohio St.3d 51, 58. Thus, joinder is proper unless the defendant is prejudiced. State v. Lott (1990), 51 Ohio St.3d 160, 163;State v. Muniz, 162 Ohio App.3d 198, 2005-Ohio3-580 at ¶ 15.
 {¶ 30} When a defendant claims that he was prejudiced by the joinder of multiple offenses, a court must determine (1) whether, under Evid.R. 404(B), the evidence of the other crimes would be admissible even if the counts or indictments were severed; or, if not, (2) whether the evidence of each crime is simple and distinct. Lott, at 163. When the state shows that the evidence of each crime is simple and direct, it is not required to meet the stricter "other acts" admissibility test. Id. (Citations omitted.) In the case before us, the proof of each charged offense is separate and distinct; therefore, it is unlikely that the jury was confused as to which evidence proved appellant attempted to burglarize and rob Rufenacht and which evidence demonstrated that appellant burglarized, robbed and murdered Reilly. See State v. Coley, 93 Ohio St.3d 253, 260,2001-Ohio-1340.
 {¶ 31} Moreover, the evidence of each of these crimes would be admissible in separate trials if the common pleas court denied appellee's motion for joinder. Evid.R. 404(B) provides, "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." As applied to the case under consideration, the evidence of all crimes was so connected that "proof of one incidentally involved the other" and/or would be admissible in separate trials to show, at the least, motive (to obtain funds to purchase crack cocaine), opportunity (Both victims were older women who were initially in front of their homes and their respective front doors were unlocked.), plan (Again, both victims were older women who would likely have purses, who lived in the same vicinity, and who were alone at the time of the offenses.), and identity by means of modus operandi (The crimes were committed in the same vicinity, older women were the victims, the crimes occurred about an hour from each other, each involved the theft of money, each home was entered by the offender, a violent act was committed in each incident.). Based upon all of the foregoing, we find appellant's Assignment of Error No. II not well-taken.
 {¶ 32} Appellant's Assignment of Error No. III asserts that the common pleas court abused its discretion by denying his motion in limine and admitting gruesome autopsy photographs into evidence. Specifically, appellant challenges the color photographs that depict (1) the external injuries to Reilly's body; (2) the vessels and muscles in Reilly's neck at the base of her brain that hemorrhaged as a result of either a chokehold that included a rotational movement or a blow to the base of a skull; (3) the victim's ruptured "strap" muscle; and (4) the left side of Reilly's skull after the coroner had pulled the scalp down. This last photograph reveals the trauma and damage caused to the decedent's skull from a blunt force blow.
 {¶ 33} In State v. Maurer (1984), 15 Ohio St.3d 239, at paragraph seven of the syllabus, the Ohio Supreme Court explained the stricter evidentiary test in capital cases, stating that:
 {¶ 34} "Properly authenticated photographs, even if gruesome, are admissible in a capital prosecution if relevant and of probative value in assisting the trier of fact to determine the issues or are illustrative of testimony and other evidence, as long as the danger of material prejudice to a defendant is outweighed by their probative value and the photographs are not repetitive or cumulative in number." Id., at paragraph seven of the syllabus. Within these parameters, the admission of photographs in a capital case is left to the sound discretion of the trial court. State v. Yarbrough, 104 Ohio St.3d 1,2004-Ohio-6087, at ¶ 74. An abuse of discretion is not simply an error of law or judgment; rather, it implies that the court's attitude in reaching its decision is unreasonable, arbitrary, or unconscionable. State v. Adams (1980), 62 Ohio St.2d 151,157-158.
 {¶ 35} With regard to the photographs displaying the external injuries to Reilly's neck, face, and the defense injuries on her hands, these exhibits not only showed Reilly's wounds, but also illustrated the coroner's testimony on the cause of death, and helped prove Hicks' intent. See State v. Hughbanks,99 Ohio St.3d 365, 2003-Ohio4-121, at ¶ 73. As to the disputed autopsy photographs introduced in order to illustrate the hemorrhaging, bruising, and structural damage to Reilly's neck and skull that the coroner observed, this evidence was not repetitive and supported the coroner's conclusion that the victim died from strangulation and blunt force trauma.[3] They also were probative of the force used by appellant and, thereby, appellant's intent to kill.
See, e.g., the following capital cases: State v. Smith,97 Ohio St.3d 367, 2002-Ohio6-659, at ¶ 34-37 (The trial court did not abuse its discretion in admitting a number of autopsy slides showing injury to the victim's internal organs because they "were relevant in that they depicted the wounds inflicted on the victim, supported the coroner's testimony on cause of death, and helped prove appellant's intent."); State v. Hartman,93 Ohio St.3d 274, 2001-Ohio-1580 at ¶ 22 (Medical examiner's photographs illustrating that the victim was stabbed 138 times, her throat was slit, her hands were cut off and that she was badly bruised required repetitive photographs and were properly admitted to illustrate the medical examiner's testimony and demonstrate an intent to kill); State v. Williams (Mar. 24, 1995), 11th Dist. No. 89-T-4210, reversed, in part, on other grounds, State v.Williams (1996), 74 Ohio St.3d 569. (The court found that the probative value of an autopsy photograph showing dried blood in the victim's stomach outweighed any material prejudice to the defendant).
 {¶ 36} As a result, we find that the probative value of the autopsy photographs outweighed material prejudice to appellant, and the trial court did not abuse its discretion in admitting these exhibits into evidence. Appellant's Assignment of Error No. III is found not well-taken.
 {¶ 37} Appellant's Assignment of Error No. IV contends that he was deprived of effective assistance of trial counsel because that counsel failed to file a motion for separate trials of the charges against him in the Rufenacht case and the charges against him in the Reilly case. Appellant also asserts that trial counsel was ineffective due to the fact that that he only preserved his objection to some, but not all, of the autopsy photographs.
 {¶ 38} The right to counsel is guaranteed under the United States and Ohio Constitutions. In Ohio, a properly licensed attorney is presumed competent. See State v. Lytle (1976),48 Ohio St.2d 391, 397, vacated, in part, on other grounds, (1978),438 U.S. 910, 1154. Consequently, in order to prevail on a claim of ineffective assistance of counsel, it is the defendant who must demonstrate that his defense counsel substantially violated essential duties to the client and that counsel's ineffectiveness prejudiced the defense. Strickland v. Washington (1984),466 U.S. 668, 687. If a court can resolve a claim of ineffective assistance of counsel under only one prong of this two-prong test, it does not have to analyze the other prong. Strickland,
at 697.
 {¶ 39} Initially, we note that appellant's trial counsel objected to the joinder of the Rufenacht and Reilly cases and entered a continuing objection even after the trial court granted the prosecution's motion for joinder. Moreover, a motion to sever the two cases would have been unsuccessful.
 {¶ 40} If offenses are properly joined pursuant to Crim.R. 8(A), a defendant may still file, pursuant to Crim.R. 14, a motion to sever. Schaim, 65 Ohio St.3d at 58. To demonstrate error in failing to sever, a defendant must show that: (1) his rights were prejudiced by joinder; (2) at the time he moved to sever, he provided the court with sufficient information to weigh the considerations favoring joinder; and (3) the court abused its discretion in overruling the motion. Id. at 59. As can be readily ascertained from the foregoing language, it is the defendant who bears the burden of demonstrating prejudice and that the trial court abused its discretion in denying severance.State v. Solomon, 8th Dist. Nos. 85303, 85304, 85305,2005-Ohio-6016, at ¶ 12. We conclude that in the case sub judice, a motion to sever would have failed because appellant could not establish prejudice by the joinder of the charges against him.
 {¶ 41} In determining whether appellant suffered prejudice due to the failure to file a motion to sever, we are required, as we were in determining proper joinder under Crim.R. 8(A), to ask whether evidence of the other charged offenses would have been admissible as other acts evidence even if severed, and if not, whether evidence of each is so simple and distinct that the jury could clearly segregate the evidence. Id. at 59. In order to avoid unnecessary repetition, we point out that per our discussion of appellant's Assignment of Error No. II, appellant would be unable to establish prejudice by showing that the evidence of the joined offenses was not admissible as other acts evidence if severed or that the evidence was not so simple and distinct that the jury could not segregate it. Thus, we must find that the fact that trial counsel did not file a motion to sever was not a violation of any of his duties to his client and, therefore, did not prejudice appellant's case.
 {¶ 42} Appellant also urges that his trial counsel's performance was deficient because counsel failed to object to the admission of all of the autopsy photographs. We disagree. Prior to trial, appellant's counsel filed a motion in limine seeking to exclude all autopsy photographs from evidence. At trial, counsel made a specific objection to the admission of Photographs 18-23, and the motion was overruled by the court. Additionally, counsel objected to showing the remainder of the photographs to the jury "without them being admitted." At that point, the trial court stated that the photographs "will assist the jury in understanding what the coroner is trying to tell them. So they are admissible." The judge then allowed the prosecution to admit each photo separately after it had been identified and discussed by the coroner. We find that the manner in which trial counsel objected to the autopsy photographs did not violate any duty owed to his client. Accordingly, appellant's constitutional right to effective assistance of counsel was not abrogated, and his Assignment of Error No. IV is found not well-taken.
 {¶ 43} Appellant's Assignment of Error No. V contends that his judgment of conviction on the charges of aggravated burglary/aggravated robbery and aggravated murder in the Reilly case are against the manifest weight of the evidence. In particular, he asserts that no physical evidence was offered to link him to the Reilly murder and that discrepancies exist between the details of appellant's confession and details garnered from other sources. These alleged discrepancies are: (1) appellant said that Reilly's purse was blue when the purse was actually black; (2) blood on Reilly's social security card was not appellant's and; (3) appellant's claim that he just pushed Reilly conflicted with the coroner's finding of homicide.
 {¶ 44} Appellant also indicates that an exhibit in the record of this cause further indicates that the jurors were aware of the "contradictions, conflicts or uncertainty in the evidence." Appellant also admits, however, that this exhibit is not listed in the trial transcript index. We have thoroughly reviewed the record, and the exhibit mentioned by appellant was never admitted into evidence. Accordingly, this court cannot add this exhibit to the case on appeal, and must disregard this argument. See App.R. 9(A); State v. Hill (2001), 90 Ohio St.3d 571, 2001-Ohio-20, at ¶ 4, citing State v. Ishmail (1978), 54 Ohio St.2d 402. We shall, nevertheless, address the other alleged error raised by appellant in this assignment of error.
 {¶ 45} When presented with a manifest weight argument, we must determine whether the jury, in interpreting the facts, so lost its way that its verdict results in a manifest miscarriage of justice. State v. Thompkins (1997), 78 Ohio St.3d 380, 387,1997-Ohio-52. In reaching this decision, a reviewing court is required "to examine the entire record, weigh the evidence and all reasonable inferences, [and] consider the credibility of the witnesses * * *." Id., citing State v. Martin (1983),20 Ohio App.3d 172, 175. "The discretionary power to grant a new hearing should be exercised only in the exceptional case in which the evidence weighs heavily against the judgment." Id.
 {¶ 46} While we agree that there was no physical evidence linking appellant to Reilly's aggravated murder, there was ample circumstantial evidence[4] offered at appellant's trial to establish, beyond a reasonable doubt, that during the aggravated burglary/aggravated robbery, appellant purposely caused the death of Mary Lou Reilly.
 {¶ 47} Appellant admitted that he committed the aggravated burglary/aggravated robbery and acknowledged that he used physical force when Reilly yelled at him and refused to give him her purse. The coroner testified that, upon the basis of her autopsy findings, Reilly's death was the result the use of physical force. Additionally, Reilly's neighbor, Karen Quigley, identified appellant as the man she saw walking on the sidewalk in front of her house sometime after 3:40 p.m. on March 30, 2002. Shortly thereafter, Quigley learned that police and fire officials were at Reilly's home.
 {¶ 48} Moreover, appellant confessed that he was involved in a strikingly similar incident that occurred approximately one mile from Reilly's residence and was within the same time frame. In that attempted aggravated burglary/aggravated robbery, appellant was thwarted by Rufenacht and became so angry that he threw a cinder block through Rufenacht's sliding glass door. Finally, the police found Reilly's social security card in the area where appellant stated that he threw the purse. All of this evidence, if believed by the jury, proves, beyond a reasonable doubt, that appellant is guilty of violating R.C. 2903.01(B) with specifications that the aggravated murder was committed during the course of an aggravated burglary/aggravated robbery.
 {¶ 49} As to the alleged discrepancies in the evidence offered at appellant's trial, we cannot say that in resolving the conflicts in the evidence in this case, the jury clearly lost its way and created such a manifest miscarriage of justice that its judgment must be reversed. Accordingly, appellant's Assignment of Error V is found not well-taken.
 {¶ 50} On consideration whereof, this court finds that appellant was neither prejudiced nor prevented from having a fair hearing, and the judgment of the Lucas County Court of Common Pleas is affirmed. Appellant is ordered to pay the costs of this appeal pursuant to App.R. 24. Judgment for the clerk's expense incurred in preparation of the record, fees allowed by law, and the fee for filing the appeal is awarded to Lucas County.
JUDGMENT AFFIRMED.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
Handwork, J., Pietrykowski, J. and Parish, J., concur.
[1] Additionally, appellant signed a second waiver form and reviewed his constitutional rights prior to taking a voice stress analysis test.
[2] Appellant insists that the trial court could not have reviewed the videotapes of the custodial interrogations. However, and despite the fact that the trial court orally ruled on the motion to supress from the bench on March 28, 2003, the trial court did not enter its judgment entry on the motion to supress until April 4, 2003. Due to the fact that the tapes are part of the record, we presume that they were considered by the court in making its decision.
[3] This testimony and photographic evidence is contrary to appellant's statements indicating that he had merely pushed Reilly down and that "maybe" her front door struck her head as he was fleeing the scene.
[4] Circumstantial evidence has the same probative value as direct evidence. State v. Treesh, 90 Ohio St.3d 460,2001-Ohio-4, at ¶ 61.