[Cite as *State v. Johnson*, 2017-Ohio-8206.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

State of Ohio

Court of Appeals No. L-16-1165

    Appellee

Trial Court No. CR0201601322

v.

Charles Johnson

**DECISION AND JUDGMENT**

    Appellant

Decided: October 13, 2017

* * * * *

Julia R. Bates, Lucas County Prosecuting Attorney, and
Brenda J. Majdalani, Assistant Prosecuting Attorney, for appellee.

Patricia Horner, for appellant.

* * * * *

**MAYLE, J.**

{¶ 1} Appellant, Charles Johnson, appeals the June 27, 2016 judgment of the

Lucas County Court of Common Pleas sentencing him to an aggregate prison term of 18

years to life. For the following reasons, we affirm, in part, and reverse, in part.

## I. Background and Facts

{¶ 2} Around 1:45 a.m. on February 12, 2016, Johnson shot and killed Darnell Mitchell at the Classic Lounge in Toledo. An off-duty Toledo police officer who was providing security at the bar heard gunshots and saw Johnson holding a gun, prompting the officer to shoot and disable Johnson. The bullet struck Johnson in the back of his left shoulder and caused a superficial wound. He was arrested and taken by ambulance to the Toledo Hospital for treatment.

{¶ 3} Johnson arrived at the hospital around 2:00 a.m. His blood alcohol level was tested when he arrived and is recorded in Johnson's medical records as .27 percent. The medical records indicate that Johnson was combative upon arrival and received sedating medications. The records also show that Johnson received a prescription for a narcotic painkiller upon his discharge. The hospital discharged Johnson to the custody of the Toledo Police Department ("TPD") at 2:19 p.m. TPD officers took him to the police department for questioning. Sergeant Kevin Korsog and Sergeant Tim Campbell interviewed Johnson beginning at 3:10 p.m. The interview lasted approximately one hour (including periods where Johnson sat in the room by himself for several minutes). Officers took Johnson into custody at the end of the interview.

{¶ 4} On February 19, 2016, the grand jury indicted Johnson on one count of aggravated murder in violation of R.C. 2903.01(A) and one count of murder in violation of R.C. 2903.02(B). Both counts included gun specifications. On May 23, 2016, Johnson filed a motion seeking to suppress his statements to the police because they were

2.

obtained in violation of *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). On May 31, 2016, the trial court held a suppression hearing. The state presented Sergeant Korsog's testimony and admitted the recording of the interview into evidence. Johnson did not present any evidence.

{¶ 5} Sergeant Korsog testified that he was involved in the investigation of Mitchell's murder. He and Sergeant Campbell interviewed Johnson as part of the investigation. The interview took place approximately 13 hours after Johnson was shot and almost an hour after he was discharged from the hospital. Although Johnson arrived at the police station in a hospital gown, the transport officers reported that Johnson did not display any unusual behavior while on the way to the police station.

{¶ 6} Sergeant Korsog testified that before he interviews a suspect, victim, or witness, his normal practice is to first assess whether the interviewee is capable of speaking to him in a "clear, conscious, and knowledgeable way." He generally does not interview someone who is actively being treated at the hospital, but indicated that a suspect's discharge from the hospital is a significant sign that the suspect is capable of giving an interview. Sergeant Korsog stated that, in this case, he believed that Johnson was lucid and capable of speaking with him based on the transport officers' report and his own observation of Johnson's demeanor.

{¶ 7} Sergeant Korsog began the interview by reading Johnson his *Miranda* rights from a printed form. Johnson did not sign a form acknowledging his rights, but Sergeant Korsog testified that Johnson verbally acknowledged that he understood each right.

3.

Although the microphones in the interview room did not pick up the sound, the video confirms that Johnson nodded "yes" when Sergeant Korsog asked him if he understood each separate right. After reviewing Johnson's rights with him, Sergeant Korsog determined that Johnson was lucid and proceeded with his questioning. Sergeant Korsog monitored Johnson's lucidity throughout the interview and never became concerned that Johnson lacked understanding of the situation or was incapable of providing information. Johnson engaged in conversation with Sergeant Korsog and his partner, and asked and answered questions related to the investigation.

{¶ 8} On cross, Sergeant Korsog admitted that he knew that the hospital had given Johnson some type of pain medication, but knew nothing else about the medication. Based on his observations, he did not believe any drugs were interfering with Johnson's mental capacity. He also testified that although other officers told him that Johnson had smelled of alcoholic beverages at the scene, Johnson did not smell of alcoholic beverages during the interview. Sergeant Korsog knew that the hospital conducted a blood alcohol screening, but he was not aware of the results of the test until defense counsel mentioned them at the hearing. Sergeant Korsog stated that he took both Johnson's earlier intoxication and the length of time between the shooting and the interview into account, and he still believed that Johnson understood the situation and that alcohol was not a factor. Sergeant Korsog did admit, however, that people under the influence of alcohol or drugs can appear lucid and answer questions. He further admitted that he did not

4.

know Johnson prior to the interview, so he did not know if Johnson's demeanor and behavior at the time of the interview were normal.

{¶ 9} The video of the interview shows Johnson speaking clearly, engaging in normal conversation, asking relevant questions, and answering the officers' questions. He appears calm, alert, and focused on the task at hand. During the interview, the officers ask Johnson if he is all right, immediately get him water when he asks for it, offer him something to eat, and bring him food. Beyond Johnson's hospital garb, the video shows two indications that his injuries might have been affecting him. The first is his inability to sign a form consenting to a DNA swab because of an injury to his hand. Johnson also loses his balance when he stands up from his chair; this happens near the end of the video while the officers are out of the room. He does not have any balance issues when he stands to allow officers to put him in handcuffs. Johnson does not tell the officers that he is tired or act tired during the interview, although he does lay his head on the table several times while the officers are out of the room. At no point does Johnson ask to stop the interview, ask for an attorney, request medical attention, tell the officers that he is in pain, or show physical signs of being in severe pain.

{¶ 10} The trial court denied Johnson's motion to suppress from the bench at the conclusion of the suppression hearing and filed a judgment entry denying the motion on June 2, 2016.[1] The case was tried to a jury beginning on June 21, 2016, and on June 23,

---

[1] Although the trial court denied Johnson's motion to suppress from the bench at the end of the hearing after seeing only approximately ten minutes of the interview, it did not file

2016, the jury convicted Johnson of murder and the associated gun specification and acquitted him of aggravated murder and the associated gun specification. The trial court immediately sentenced him to a prison term of 15 years to life for the murder plus 3 years for the gun specification. The court also ordered Johnson to pay the costs of prosecution, appointed counsel, confinement, and supervision, finding that "Defendant found to have, or reasonably may be expected to have, the means to pay all or part of the applicable costs of supervision, confinement, assigned counsel, and prosecution as authorized by law."

{¶ 11} Johnson appeals his conviction, raising two assignments of error:

> I. THE TRIAL COURT ERRED IN DENYING DEFENDANT'S MOTION TO SUPPRESS HIS STATEMENT AS HE WAS UNDER THE INFLUENCE[.]

> II. THE TRIAL COURT ERRED IN ORDERING DEFENDANT TO PAY COSTS AND REIMBURSE THE STATE[.]

---

its judgment entry denying the motion until two days later. Because the recordings are part of the record, we presume that the court considered them in making its decision. *State v. Hicks*, 6th Dist. Lucas Nos. L-04-1021 and L-04-1022, 2005-Ohio-6848, ¶ 21, fn. 2.

6.

## II. Law and Analysis

## A. Motion to Suppress

{¶ 12} In his first assignment of error, Johnson contends that his statement to Sergeant Korsog was not voluntary. He argues that Sergeant Korsog knew that Johnson was under the influence of pain medication and alcohol at the time of the interview, so attempting to interview him was inherently coercive. The state counters that competent, credible evidence supports the trial court's finding that Johnson's alleged intoxication and earlier use of pain medication did not render his statement involuntary.

{¶ 13} Appellate review of a motion to suppress presents a mixed question of law and fact. *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8. The trial court acts as the trier of fact at a suppression hearing. The trial court weighs the evidence and determines the credibility of the witnesses. Although we must accept any findings of fact that are supported by competent, credible evidence, we conduct a de novo review to determine whether the facts satisfy the applicable legal standard, and this independent review is done without deference to the trial court. *State v. Codeluppi*, 139 Ohio St.3d 165, 2014-Ohio-1574, 10 N.E.3d 691, ¶ 7, citing *Burnside* at ¶ 8; *State v. Jones-Bateman*, 6th Dist. Wood Nos. WD-11-074 and WD-11-075, 2013-Ohio-4739, ¶ 9.

{¶ 14} We note that Johnson argues only that his statement to the police was involuntary; he does not argue that his waiver of his *Miranda* rights was made involuntarily, unknowingly, and unintelligently. Although related, these are distinct issues. *State v. Eley*, 77 Ohio St.3d 174, 178, 672 N.E.2d 640 (1996); *State v.*

7.

*Underdown*, 10th Dist. Franklin No. 06AP-676, 2007-Ohio-1814, ¶ 16.  Thus, even though Johnson does not dispute that he waived his *Miranda* rights before speaking with police, we must nonetheless consider whether his subsequent statements were given voluntarily.

{¶ 15} In determining whether a statement is voluntary, the court considers whether the statement is the result of police coercion or overreaching and, if so, whether the totality of the circumstances surrounding the statement indicates that it was involuntary.  Evidence of police coercion or overreaching—for example, physical abuse, threats, or deprivation of food, medical treatment, or sleep—is a prerequisite to a defendant's statements being considered involuntary.  *State v. Clark*, 38 Ohio St.3d 252, 261, 527 N.E.2d 844 (1988).  Such evidence triggers a totality of the circumstances analysis.[2]  *Id.*; *Eley* at 178; *State v. Downard*, 6th Dist. Wood No. WD-05-086, 2007-Ohio-2144, ¶ 22, citing *Colorado v. Connelly*, 479 U.S. 157, 164, 107 S.Ct. 515, 93 L.Ed.2d 473 (1986).  That is, if there is no evidence of police coercion, the court need not assess the totality of the circumstances.  *State v. Belton*, 149 Ohio St.3d 165, 2016-Ohio-1581, 74 N.E.3d 319, ¶ 107, citing *State v. Wesson*, 137 Ohio St.3d 309, 2013-Ohio-4575, 999 N.E.2d 557, ¶ 35.

---

[2] A "totality of the circumstances" analysis determines if a defendant's statement was voluntary considering "the age, mentality, and prior criminal experience of the accused; the length, intensity, and frequency of interrogation; the existence of physical deprivation or mistreatment; and the existence of threat or inducement."  *State v. Edwards*, 49 Ohio St.2d 31, 40-41, 358 N.E.2d 1051 (1976).

8.

{¶ 16} A review of the record in this case shows that Johnson was not subject to coercion or overreaching by Sergeant Korsog or any other TPD officer. Johnson makes no allegations of physical abuse or threats. Nor does the record support a finding that Johnson was deprived of food, sleep, or medical treatment. In fact, the record shows that the officers offered and provided food to Johnson; the officers provided Johnson with water when he requested it; the interview happened in the middle of the afternoon; Johnson never mentioned being tired or acted tired while the officers were in the room; Sergeant Korsog spoke to Johnson only after Johnson was discharged from the hospital; the interview happened more than 12 hours after Johnson received a superficial gunshot wound; Johnson did not tell the officers that he was intoxicated or had taken any medication that could affect his thinking; Johnson did not say that he was in pain; and Johnson did not act as though he was experiencing pain. The trial court did not make a finding that no coercion occurred because the motion to suppress argued that Johnson did not knowingly, voluntarily, and intelligently waive his *Miranda* rights (not that his confession was involuntary), which does not require a showing of coercion. *See Underdown*, 10th Dist. Franklin No. 06AP-676, 2007-Ohio-1814, at ¶ 16. Regardless, there is significant competent, credible evidence in the record to support a finding that there was no police coercion.

{¶ 17} Johnson argues that the interview was inherently coercive because it happened an hour after he was released from the hospital and half a day after he received a gunshot wound. He claims to have been in pain and under the influence of alcohol and

9.

pain medication. While these facts are relevant to the totality of the circumstances, we found no authority supporting the contention that the mere existence of these factors, alone, rises to the level of coercion or overreaching.

{¶ 18} Sergeant Korsog's testimony at the hearing and the video of the interview do not support a finding that the police used Johnson's alleged weaknesses to get him to talk to them. Rather, Sergeant Korsog testified that he took into account everything he knew about Johnson and the situation, including that Johnson smelled of alcohol at the time of the murder (13 hours before the interview); that Johnson had been shot earlier that day; and that medical professionals had determined that Johnson no longer required inpatient medical care. Sergeant Korsog also testified that he evaluated Johnson's appearance and demeanor before and during the interview and determined that Johnson was capable of providing a voluntary statement. Sergeant Korsog noted that Johnson did not smell of alcohol, did not slur his speech, did not mention any alcohol or pain medicine use, and appeared alert and lucid.

{¶ 19} We therefore find that Johnson's statement was voluntary because it was not a result of coercion or overreaching and the trial court properly denied the motion to suppress. Accordingly, Johnson's first assignment of error is not well-taken.

## B. Imposition of Costs

{¶ 20} Johnson's second assignment of error challenges the trial court's imposition of the costs of prosecution, appointed counsel, confinement, and supervision. He contends that the record contains no evidence of his ability to pay and that the court

10.

did not verbally advise him at sentencing that it was imposing the costs of prosecution. The state concedes that there is nothing in the record about Johnson's ability to pay (although the state presumes that Johnson has the ability to pay something from potential future prison earnings) and also admits that the trial court did not notify Johnson that it was imposing the costs of prosecution as part of Johnson's sentence. The state urges us to modify the trial court's judgment entry to waive costs.

{¶ 21} Our standard of review on this issue is whether the imposition of costs and financial sanctions was contrary to law. R.C. 2953.08(A)(4) and (G)(2)(b); *State v. Farless*, 6th Dist. Lucas Nos. L-15-1060 and L-15-1061, 2016-Ohio-1571, ¶ 4, citing *State v. Collins*, 12th Dist. Warren No. CA2014-11-135, 2015-Ohio-3710, 41 N.E.3d 899, ¶ 30 ("An appellate court may not modify a financial sanction unless it finds by clear and convincing evidence that it is not supported by the record or is contrary to law.").

{¶ 22} With regard to the costs of prosecution, R.C. 2947.23(A)(1)(a) provides that the trial court shall render against a convicted defendant a judgment for the costs of prosecution without consideration of whether the defendant has the ability to pay such costs. *State v. Rohda*, 6th Dist. Fulton No. F-06-007, 2006-Ohio-6291, ¶ 13. At a defendant's request, the trial court has the discretion to waive payment of the costs described in R.C. 2947.23 if the court finds that the defendant is indigent. R.C. 2949.092; *State v. Joseph*, 125 Ohio St.3d 76, 2010-Ohio-954, 926 N.E.2d 278, ¶ 11. Under R.C. 2947.23(C), the trial court retains jurisdiction to address the waiver,

11.

suspension, or modification of the payment of the court costs, so a defendant need not request a waiver of costs at the time of sentencing. *State v. Phillips*, 6th Dist. Wood Nos. WD-16-020, WD-16-028, and WD-16-029, 2017-Ohio-7107, ¶ 36, citing *State v. Farnese*, 4th Dist. Washington No. 15CA11, 2015-Ohio-3533, ¶ 12-16.

{¶ 23} Under a prior version of R.C. 2947.23,[3] a defendant who did not seek waiver of costs at the time of sentencing was precluded from seeking waiver in the future. Because of the prejudice that resulted when a defendant was precluded from claiming indigence and seeking a waiver of fees, the Supreme Court of Ohio held that the trial court's failure to verbally notify the defendant at sentencing that it was imposing the costs of prosecution was error. *Joseph* at ¶ 22. The statute has since been amended,[4] however, to give the trial court continuing jurisdiction to waive, suspend, or amend the costs of prosecution, rendering the court's failure to verbally notify the defendant about costs non-prejudicial. R.C. 2947.23(C); *see State v. Johnson*, 6th Dist. Lucas No. L-15-1220, 2016-Ohio-8084, ¶ 11-13; *Farnese* at ¶ 16; *State v. Williams*, 3d Dist. Auglaize No. 2-13-31, 2014-Ohio-4425, ¶ 17. Although the trial court erred by failing to notify Johnson that it was ordering him to pay the costs of prosecution under R.C. 2947.23, Johnson was not prejudiced by the error. Accordingly, we find that this error is harmless.

---

[3] 2012 Am.Sub.S.B. 337, effective Sept. 28, 2012.

[4] 2012 Sub.H.B. 247, effective Mar. 22, 2013.

12.

**{¶ 24}** Prior to imposing the costs of confinement and assigned counsel, the trial court must first find that the defendant has, or will have, the ability to pay. For example, R.C. 2929.18(A)(5)(a)(ii) requires that the trial court impose against all convicted defendants a financial sanction for the costs of confinement in a state institution "to the extent he is able to pay." Likewise, R.C. 2941.51(D) provides that the cost of appointed counsel must be paid by the county as approved by the court. The court can order the defendant to pay all or a part of the cost of appointed counsel, but only if the court determines that the offender "has, or reasonably may be expected to have, the means to meet some part of the costs of the services rendered." *Id.* Although the court is not required to conduct a hearing on a defendant's ability to pay before imposing the costs of confinement or appointed counsel, the record must contain some evidence that the court considered the defendant's ability to pay. *State v. Maloy*, 6th Dist. Lucas No. L-10-1350, 2011-Ohio-6919, ¶ 13.

**{¶ 25}** The record here is devoid of evidence showing that the trial court considered Johnson's ability to pay or made a finding that Johnson has, or reasonably will have, the ability to pay before imposing the costs of confinement and appointed counsel. Without such evidence, the record does not support the trial court's statement in the sentencing entry that "[d]efendant found to have, or reasonably may be expected to have, the means to pay all or part of the applicable costs * * *." Accordingly, we find that the imposition of the costs of confinement and appointed counsel are contrary to law.

13.

On that limited basis, we find Johnson's second assignment of error well-taken, and we vacate that portion of the sentencing entry.

## III.  Conclusion

{¶ 26} Based on the foregoing, the June 27, 2016 judgment of the Lucas County Court of Common Pleas is affirmed, in part, and reversed, in part.  The portion of the trial court's sentencing order that requires Johnson to pay the costs of his confinement and appointed counsel is vacated.  The judgment of conviction is affirmed in all other respects.  The parties are ordered to split the costs of this appeal pursuant to App.R. 24.

Judgment affirmed, in part,
and reversed, in part.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Arlene Singer, J.                            

_____
JUDGE

James D. Jensen, P.J.                  

Christine E. Mayle, J.                   
CONCUR.

_____
JUDGE

_____
JUDGE

14.