**[Cite as *State v. Watkins*, 2025-Ohio-1717.]**

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

State of Ohio                                      Court of Appeals No.  L-24-1112

     Appellee                                  Trial Court No.  CR0202302494

v.

Christopher Watkins                          **DECISION AND JUDGMENT**

     Appellant                                  Decided:  May 13, 2025

* * * * *

Julia R. Bates, Lucas County Prosecuting Attorney, and
Joseph H. Gerber, Assistant Prosecuting Attorney, for appellee.

Laurel A. Kendall, for appellant.

* * * * *

**OSOWIK, J.**

{¶ 1} This is an appeal of a May 2, 2024 judgment of the Lucas County Court of
Common Pleas, convicting appellant, following a bench trial, on one count of robbery, in
violation of R.C. 2911.02(A)(2), a felony of the second degree, and sentencing appellant
to an indefinite term of incarceration ranging from a minimum of six years to a maximum
of nine years.

{¶ 2} The parties concur, and we likewise agree, that the trial court's imposition of the costs of confinement and supervision was not supported by the requisite R.C. 2929.19(B)(5) indicia of an ability to pay, and thus, it was improper. Accordingly, we vacate that portion of the judgment, and as set forth more fully below, we affirm the remainder of the judgment.

{¶ 3} Appellant, Christopher Watkins, sets forth the three following assignments of error:

"I. The State of Ohio did not prove beyond a reasonable doubt that appellant did not act in self-defense, such that his conviction for robbery was against the manifest weight of the evidence.

"II. The State of Ohio did not prove that a theft occurred, such that appellant's conviction for robbery was against the manifest weight of the evidence.

"III. The trial court erred when it found that appellant had, or reasonably was expected to have, the ability to pay all or part of the applicable costs of supervision, confinement, and appointed counsel, but failed to find at trial that appellant had the ability to pay said costs."

{¶ 4} The following undisputed facts are relevant to this appeal. This case arises from an incident occurring on the evening of May 22, 2023, in the parking lot adjacent to the Talmadge Rd. Panera restaurant in Toledo.

{¶ 5} M.M., the victim in this case, went to Panera, parked in the parking lot, and went inside to order a beverage. When parking outside of Panera, M.M. observed

2.

appellant, who was bent down adjacent to a bed of landscaping rocks, next to the parking lot.

{¶ 6} When M.M. returned to her vehicle, a female bystander in the parking lot advised M.M. that appellant had thrown rocks at her windshield, cracking it. M.M. observed the fresh damage to her windshield, approached appellant, and asked him why he damaged her windshield. Appellant neither admitted, or denied, damaging her windshield, and ignored M.M.'s inquiry. Faced with these circumstances, and in hope of having appellant held accountable, M.M. took out her mobile phone to photograph appellant.

{¶ 7} At this juncture, appellant approached M.M., grabbed her phone, punched her, knocking her to the ground, and then kicked her, causing a facial laceration that required surgical glue to repair during M.M.'s subsequent emergency room treatment at St. Ann's Hospital.

{¶ 8} An employee of Panera observed the incident occurring, ran out into the parking lot, and came to the aid of M.M. In addition, the Panera store manager called 9-1-1, and reported that a man, later determined to be appellant, had struck and kicked M.M., taken her phone, and he requested that emergency assistance be dispatched to the scene. In the interim, appellant fled, ran across the parking lot, and went into Franklin Park Mall, still in possession of M.M.'s mobile phone, as reflected by a phone tracker application installed on M.M.'s mobile phone showing her phone moving through the

3.

mall immediately after the incident.  Appellant was not located at that time, but he was identified as the perpetrator by the investigating officers.

{¶ 9} On September 26, 2023, appellant was indicted on one count of robbery, in violation of R.C. 2911.02, a felony of the second degree.  On April 17, 2024, appellant waived the right to a jury trial, and a bench trial was conducted.  Appellant was found guilty.  On May 2, 2024, appellant was sentenced to an indefinite term of incarceration ranging from a minimum of six years to a maximum of nine years.  This appeal ensued.

{¶ 10} In the first assignment of error, appellant argues that the state failed to prove that appellant did not act in self-defense in the incident underlying this case, thereby undercutting the manifest weight of the evidence in support of his conviction. We do not concur.

{¶ 11} As held by this court in *State v. McClain*, 2025-Ohio-577, ¶ 22 (6th Dist.),

> In evaluating the manifest weight challenge involving self-defense, we must review the entire record, consider the credibility of witnesses, and determine whether the trier of fact clearly lost its way and created a manifest miscarriage of justice with respect to its finding that the state disproved at least one of the elements of self-defense beyond a reasonable doubt.  *State v. Gibson*, 2023-Ohio-1640, ¶ 12 (1st Dist.), citing *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997).

{¶ 12} In conjunction, as held by this court in *State v. Bulger*, 2023-Ohio-4004, ¶ 20 (6th Dist.),

> To support a claim of self-defense involving the use of non-deadly force [the type of alleged self-defense force at issue in this case], a defendant must show that (1) he was not at fault in creating the situation giving rise to the affray; (2) he has reasonable grounds to believe or an honest belief that he or she was in imminent danger of bodily harm, and (3) he did not use

4.

more force than was reasonably necessary to defend against the imminent danger of bodily harm. *Greer*, 6th Dist. Lucas No. L-22-1082, 2023-Ohio-103 at ¶ 33, quoting *State v. Paskins*, 200 N.E.3d 684, 2022-Ohio-4024, ¶ 48 (5th Dist.).

{¶ 13} In applying the above-guiding legal principles to this case, the record shows that when describing the incident at trial, M.M. testified,

I was at the Panera on Talmadge going in to get a drink * * * I saw the gentleman that's sitting there in the orange suit down by the [landscape] rocks that are there in the parking lot. I came out. He had broken my windshield * * * [H]e wouldn't address me * * * [I thought] at least if I have a picture, I have a picture of this person in my phone [of who] broke my windshield * * * [H]e followed me, took my phone. I tried to, you know, get my phone back. He punched me, kicked me. And one of the workers that worked at the store came to my aid * * * and [appellant] took off, [running] towards the mall.

In contrast, when testifying on his own behalf at trial, appellant testified,

[S]he, like, ran off and, like, grabbed [an umbrella] out of her trunk of her car and then proceeded to, like, start following me with it in her hand * * * at that point in time, like, she proceeded to use it. She hit me with it. I turned around and hit her back and she fell to the ground * * * like, I hit her, she fell * * * It was a very quick like, like altercation.

{¶ 14} Upon cross-examination, when M.M. was asked why she struck appellant with her umbrella, she testified that she did so only in response to appellant striking her first, testifying, "*If someone's hitting you, you're going to try to defend yourself and I was trying to defend myself * * * after he hit me.*" (Emphasis added).

{¶ 15} Accordingly, the trial court heard conflicting testimony, with M.M. testifying that after she questioned appellant about breaking her windshield, she took out her phone to take his picture, then appellant grabbed her phone, struck her, and kicked

her, and in response to appellant's attack upon her, she struck appellant back with her umbrella.

{¶ 16} Conversely, contrary to M.M.'s testimony, contrary to the observations of an eyewitness in the parking lot, and contrary to the Panera manager's 9-1-1 call reporting the incident, appellant denied breaking M.M.'s windshield, and denied striking M.M. first, but he did acknowledge striking M.M., allegedly doing so only in response to her first striking him with her umbrella.

{¶ 17} The trial court considered the evidence; M.M.'s testimony, appellant's testimony, the 9-1-1 call from the Panera manager collaborating M.M.'s testimony, weighed witness credibility, and held, in rejecting appellant's self-defense claim and finding him guilty,

> I had the opportunity to listen to all of the evidence as it was presented. After taking the victim's phone, you caused her physical harm when you punched her in the face several times and then kicked her after she fell to the ground * * * [Y]ou claim you struck her after she hit you with her umbrella. Both the victim's testimony and the 911 calls indicate otherwise. You are a multi-state offender with convictions in the state of Oregon and North Carolina.

{¶ 18} Upon our review of the record, we find that appellant has not demonstrated that the trial court lost its way and created a manifest miscarriage of justice in finding the testimony of M.M., the testimony of the responding police officers, and the Panera store manager's collaborating 9-1-1 call, to be of greater credibility than appellant's self-serving, unsupported testimony that he was struck first in this incident, and, in conjunction, consistently finding that appellee disproved beyond a reasonable doubt

6.

appellant's self-defense claim that he was not at fault in creating the situation giving rise to the affray. The weight of the evidence showed that appellant struck and kicked M.M. after taking her phone, and prior to her then hitting him back with her umbrella. Accordingly, we find appellant's first assignment of error not well-taken.

{¶ 19} In appellant's second assignment of error, appellant again argues that the robbery conviction was against the manifest weight of the evidence. In support, appellant asserts that the state failed to prove the theft of M.M.'s phone by appellant. We do not concur.

{¶ 20} R.C. 2911.02(A)(2) establishes, in relevant part, "No person, in attempting or committing a theft offense * * * shall * * * [i]nflict, attempt to inflict, or threaten to inflict physical harm on another."

{¶ 21} In conjunction, as held by this court in *State v. Costilla*, 2024-Ohio-3221, ¶ 46 (6th Dist.),

> The test of manifest weight of the evidence * * * applies to the prosecution's burden of persuasion. *Messenger* at ¶ 26. A challenge to a conviction based on the manifest weight of the evidence questions whether the trial court could find a greater amount of credible evidence was admitted at trial to sustain that decision than not. *Manning* at ¶ 41, citing *State v. Montgomery*, 148 Ohio St.3d 347, 2016-Ohio-5847, 71 N.E.3d 180, ¶ 75, citing *Thompkins* at 387, 678 N.E.2d 541. In reviewing a verdict against the manifest weight of the evidence, we give deference to the trial court's credibility determinations if the testimony of a single witness, if believed, will support a conviction. *Manning* at ¶ 41, citing *Meyers*, 2018-Ohio-1903, 114 N.E.3d 1138, ¶ 140-141.

7.

{¶ 22} The record shows that during direct examination, upon inquiry regarding what happened to her mobile phone, M.M. testified, in relevant part, "[Appellant] took it. He snatched it from me."

{¶ 23} In conjunction, Detective Garrett, one of the police officers who responded to the scene, upon direct examination at trial, testified in relevant part, "I was called out to the case * * * [W]hen [M.M.] tried to take a picture of [appellant], he assaulted her and took her phone and ran * * * [A] relative was able to tell us where the phone was moving at through the mall [via a phone trafficking app]."

{¶ 24} Conversely, the record shows that during direct examination at trial, upon inquiry whether he took M.M.'s mobile phone, appellant testified, in relevant part, "No. I never took anything."

{¶ 25} In accord with *Costilla*, even if the sole basis of the verdict was the testimony of M.M. regarding the theft, that is a permissible basis of the verdict. However, the record also contains the above-detailed additional evidence supportive of the conviction.

{¶ 26} We find that the record shows that the state satisfied its burden of persuasion. The record shows that a greater amount of credible evidence was admitted at trial to sustain the verdict than not. Accordingly, we find appellant's second assignment of error not well-taken.

8.

{¶ 27} In appellant's third assignment of error, appellant argues, and appellee concedes, that the trial court erred in finding that appellant had to, or reasonably was expected to have, the ability to pay the costs of confinement and supervision.

{¶ 28} In response, appellee acknowledges, "*Here, the State concedes that the trial court made no [R.C. 2929.19(B)(5)] findings relative to cost of supervision or confinement.*"  (Emphasis added).

{¶ 29} As held by this court in *State v. Townsend*, 2023-Ohio-2625, ¶ 10 (6th Dist.),

> Under R.C. 2947.23(A)(1)(a), the imposition of prosecution costs are mandatory, and the trial court is required to impose these without consideration of whether the defendant has the ability to pay such costs. *State v. Mathis*, 6th Dist. Lucas No. L-17-1230, 2018-Ohio-4541, ¶ 18. However, the cost of confinement and supervision are discretionary and in order to impose them, the court is required to find that the defendant has, or will have, the ability to pay. *State v. Johnson*, 6th Dist. Lucas No. L-16-1165, 2017-Ohio-8206, ¶ 24. Although a formal hearing is not required, Ohio law provides that the record must contain some evidence that the trial court considered the defendant present and future ability to pay the costs of confinement and supervision * * * When the record lacks such evidence, the imposition of these costs are considered to be improper and should be vacated. *Id*.

{¶ 30} As stated above, both appellant and the state concur, and our review of the record likewise shows that the trial court did not consider appellant's present and future ability to pay the costs of confinement and supervision.  Accordingly, the trial court did not comply with R.C. 2929.19(B)(5), and, therefore, it erred in imposing those costs. Accordingly, we find appellant's third assignment of error well-taken.

9.

{¶ 31} On consideration whereof, pursuant to App.R. 12(A), we vacate the portion of the May 2, 2024 judgment assigning the costs of confinement and supervision to appellant. The remainder of the judgment is hereby affirmed. Appellee is ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment affirmed,
in part, and vacated,
in part.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Thomas J .Osowik, J.                    _____
JUDGE

Christine E. Mayle, J.

Gene A. Zmuda J.                      _____
CONCUR.                                     JUDGE

_____
JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.